IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC DECKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-CV-1234-SMY-SCW |
| | ) |
| MADISON COUNTY SHERIFF'S | ) |
| OFFICE, MADISON COUNTY | ) |
| GOVERNMENT, and THE MADISON | ) |
| COUNTY SHERIFF, in his Individual and | ) |
| Professional Capacities, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Eric Decker brings this action against Defendants Madison County Sheriff's Office, Madison County Government, and the Madison County Sheriff alleging violations pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e *et seq*. (*see* Doc. 2). Defendants move for summary judgment (Doc. 39). The Court has carefully considered the briefs and evidence submitted by the parties and, for the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED.**

### FACTUAL BACKGROUND

Plaintiff is a Captain employed by the Madison County Sheriff's Office (Doc. 39-1, p. 7). He has held that rank since 2005. *Id*. In late January 2012, Sheriff Robert Hertz who, at the time, was the Madison County Sheriff accused Plaintiff of having an extra-marital affair with a co-worker, Jaimie Linton (Doc. 39-1, pp. 101-112). Plaintiff denied the affair and Sheriff Hertz indicated that he planned to have the same conversation with Linton. *Id*. Plaintiff told Sheriff Hertz that confronting Linton could be considered sexual harassment and a violation of federal labor laws (Doc. 39-1, pp.

1

109-111). Prior to the January 2012 conversation, Plaintiff did not believe Linton was being sexually harassed (Doc. 39-1, p. 214). He formulated his opinion the day he was accused of having an affair with her. *Id.*

During the conversation, Sheriff Hertz also allegedly threatened to review Plaintiff's phone records and hire a private investigator. *Id.* During his deposition, Plaintiff testified that he did not know whether Defendants ever conducted any search or seizure of his phone records (Doc. 39-1, pp. 152-153) and that he has no evidence of anyone from Madison County, including the Sheriff, ever accessing his personal cell phone records or personal land line records (Doc. 39-1, pp. 156-158).\

According to Plaintiff, he was told by one of his supervisors not to communicate with Linton (Doc. 39-1, pp. 117-120). Plaintiff testified that he refused to comply and continued communicating regularly with Linton from January 2012 until July 2013 (Doc. 39-1, p. 128).

Plaintiff alleges he was retaliated against after his conversation with Sheriff Hertz. Specifically, in March 2012, Plaintiff's position as the Commander of Administrative Services was eliminated (Doc. 39-1, p. 25). Plaintiff testified that after his position was eliminated, he was given several options and chose to be reassigned to the position of Godfrey Substation Supervisor (Doc. 39-1, p. 26). Plaintiff chose Godfrey because "he lived in Godfrey, knew the job, and the people" (Doc. 39-1, p. 215, 39-2, p. 216). Plaintiff suffered no loss of pay or any other financial loss as a result of the transfer (Doc. 39-1, pp. 25-26, pp. 214-216). Plaintiff testified that his new position required him to apply for overtime approval (Doc. 50-7, p. 235). However, his overtime requests were always granted. *Id.*

## ANALYSIS

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc.*

*v. Near North Ins. Brokerage, Inc.* 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A party is entitled to a judgment as a matter of law where the nonmovant "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

## 42 U.S.C. § 1983 – Municipal Liability

In Count I of the Complaint, Plaintiff alleges that Defendants violated his Fourth Amendment right to be free of unreasonable searches and seizures as well as his First Amendment right of free association. Defendants argue that Plaintiff's § 1983 claim fails as a matter of law because Plaintiff cannot establish municipal liability. Defendants further contend that, even if municipal liability was established, Defendants did not violate Plaintiff's First or Fourth Amendment rights.

Section 1983 is not an independent source of tort liability, but a means of vindicating rights secured elsewhere. *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir.1997). The statute creates a cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Id.* A municipality may not be held liable under § 1983 based on a theory of *respondeat* superior or vicarious liability. *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978). Rather, a municipality may only be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom. *Id*. A plaintiff can establish a "policy or custom" by showing: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago,* 296

F.3d 531, 537 (7th Cir. 2002). In addition to showing that the municipality acted culpably in one of those three ways, a plaintiff must prove causation, demonstrating that the municipality, "through its deliberate conduct, ... was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 404 (1997).

Plaintiff asserts that he is proceeding under the third form of *Monell* liability – an unconstitutional act by a final policymaking official (*see* Doc. 50). Specifically, Plaintiff argues that "Sheriff Hertz, in his authority as Sheriff and as the County's final policy maker, punished Plaintiff for opposing Hertz's sexual harassment of one of his employees." *Id*. Where an unconstitutional action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986). "The fact that a particular official ... has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. Rather, such an official also must be responsible for establishing final government policy on a particular issue." *Valentino v. Vill. of S. Chi. Heights,* 575 F.3d 664, 675 (7th Cir. 2009).

Here, Plaintiff argues that there was no county official having authority over Sheriff Hertz and that he had the final authority over the Sheriff's office. However, there is nothing in the record, other than Plaintiff's own supposition, suggesting that Sheriff Hertz was empowered to make policy for Madison County. *See Eversole v. Steele,* 59 F.3d 710, 715–16 (7th Cir.1995) (holding that even high-ranking law enforcement officers were not final policymaking officials, because "nothing in the record suggest[ed] that [they were] vested with *policymaking authority*"). Furthermore, the record does not support Plaintiff's assertions that Defendants violated either his First or Fourth Amendment rights.

The freedom of intimate association receives protection as a fundamental element of personal liberty. *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 104 S.Ct. 3244, 3249-50, 82 L.Ed.2d

462 (1984).  To succeed on a freedom of intimate association claim, a plaintiff must demonstrate that the challenged policy imposes a direct and substantial burden on an intimate relationship. *Zablocki v. Redhail,* 434 U.S. 374, 383–87, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *see also Smith v. Shalala,* 5 F.3d 235, 238–39 (7th Cir.1993).  In this case, there is no evidence that Defendants implemented any policy to prevent Plaintiff from associating with Linton.  Although Plaintiff alleges that he was ordered not to communicate with Linton, he continued communicating with her from January 2012 until July 2013.

Likewise, there is no evidence supporting Plaintiff's Fourth Amendment claim.  The Supreme Court has held that the Fourth Amendment applies to "searches and seizures by government employers or supervisors of the private property of their employees." *O'Connor v. Ortega,* 480 U.S. 709, 715, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987).  Plaintiff testified that he did not know whether Defendants ever obtained access to his personal cell phone or land line records.  Plaintiff further admitted that he did not know whether any search of seizure of his phone ever occurred.

Given that Plaintiff cannot establish municipal liability or that Defendants violated either his First and Fourth Amendment rights, summary judgment is **GRANTED** as to Count I of Plaintiff's Complaint.

**Retaliation Claim**

In Count II of the Complaint, Plaintiff alleges that  the Sheriff's Office and Madison County Government retaliated against him for engaging in protected activity.  Specifically, Plaintiff asserts that after confronting Sheriff Hertz with what he believed was the sexually harassing treatment of Linton, Plaintiff suffered adverse employment actions.  Defendants counter that there is no evidence that Plaintiff engaged in protected activity or suffered a materially adverse employment action.

"[U]nlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir.2003). Retaliation may be established by either the direct or indirect method of proof.

The direct method requires a plaintiff to show: (1) that he engaged in activity protected by the statute; (2) that his employer took an adverse employment action against him; and (3) that there is a causal connection between the plaintiff's protected activity and the adverse employment action. *Leitgen v. Franciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 673 (7th Cir.2011). The causal nexus may be shown through direct evidence or through "a 'convincing mosaic' of circumstantial evidence" that would permit the same inference without the employer's admission. *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir.1994).

Here, Plaintiff cannot demonstrate that he suffered a materially adverse employment action as a consequence of confronting Sheriff Hertz with what he believed was sexually harassing treatment of Linton. "Materially adverse actions" are those that might dissuade a reasonable employee from engaging in protected activity. *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The evidence establishes that several months after Plaintiff's conversation with Sheriff Hertz, Plaintiff was transferred to the position of Godfrey Substation Supervisor. Plaintiff testified that he was given a choice of available positions and he chose Godfrey because it was close to his home, he was familiar with the position, and he knew the people. Plaintiff did not receive a decrease in pay or rank following the transfer. There is no evidence that Plaintiff's career prospects or his future wealth were adversely affected by the transfer. Nor is there evidence that Plaintiff's working conditions were negatively affected. Transfers that are purely lateral, involving no demotion in form or substance, and transfers involving no reduction in pay or only minor changes to working conditions are not sufficient to establish an adverse employment action. *See O'Neal v. City of Chicago,* 392 F.3d 909, 911-12 (7th Cir. 2004). Accordingly, summary judgment is **GRANTED** as to Count II of Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, this action is **DISMISSED with prejudice**.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Madison County Sheriff's Office, Madison County Government, and the Madison County Sheriff and against Plaintiff.

**IT IS SO ORDERED.**

**DATED:  December 23, 2015**

> **s/ Staci M. Yandle**
> **STACI M. YANDLE**
> **United States District Judge**